Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
Kyle Wilson (SBN 323888)
kyle@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**AMBER MACHOWSKI**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amber Machowski, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>Emad Aziz Awad Awadalla, an individual; Nevin Farag, an individual; and Does 1-10,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF: AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 *et seq.*; UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.*<br><br><br>DEMAND FOR JURY TRIAL** |

**Most Americans will become disabled at some point in life...**

COMPLAINT

Plaintiff Amber Machowski (hereinafter referred to as "Plaintiff,") complains of Emad Aziz Awad Awadalla, an individual; Nevin Farag, an individual; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.     PARTIES

1.     Amber Machowski cannot walk or stand. She is paraplegic. She broke her back in a tragic car accident and is now confined to a wheelchair for the rest of her life. Plaintiff is a California resident with physical disabilities. Plaintiff is mobility impaired. Plaintiff is qualified as being disabled pursuant to 42 USC Section 12102(2)(A), the California Unruh Civil Rights Act, Sections 51, et seq. and 52, et seq., and other statutory laws which protect the rights of "disabled persons". Plaintiff has been issued a blue permanent disability Disabled Person Parking Placard by the State of California.

2.     Defendants Emad Aziz Awad Awadalla, an individual; Nevin Farag, an individual; owned the Property ("Property") located at 1100 N. Euclid St., Anaheim, CA 92801, during Plaintiff's visits to the Property.

3.     There is a business establishment on the Property known as "Mobil" (hereinafter "businesses").

4.     DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principles and/or representatives of Defendants. Plaintiff is

unaware of the true names and capacities of Defendants sued herein, as DOES 1 through 10, inclusive, and therefore, sues those Defendants by fictitious names. Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

5.      Plaintiff alleges that Defendants at all times have been and are relevant to this cause of action, the owners, franchisees, lessees, general partners, limited partners, agents, employees, employers, represent partners, subsidiaries, partner companies, and/or joint ventures of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiff is further informed and believes and alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining defendants.

6.      Plaintiff visited the public accommodations owned and operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, or accommodations operated and/or owned by Defendants.

## II.      JURISDICTION & VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (the "ADA").

8.      Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act

expressly incorporates the ADA.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

### III.    FACTS

10.     The Property owned by Defendants is a facility which is open to the public and is a business establishment.

11.     Plaintiff alleges that the Property has been newly constructed and/or underwent remodeling, repairs, or alterations since 1992, and that Defendants have failed to comply with California access standards which applied at the time of each new construction and/or alteration or failed to maintain accessible features in operable working condition.

12.     Plaintiff visited the Property during the relevant statutory period on three separate occasions, in January 2020 and September 2020 to patronize the businesses.

13.     Defendants did not offer persons with disabilities with equivalent facilities, privileges and advantages offered by Defendants to other patrons.

14.     Plaintiff encountered barriers (both physical and intangible) that interfered with – and denied – Plaintiff the ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.

15.     Parking for patrons visiting the Property are among the facilities,

privileges, and advantages offered by Defendants to patrons of the Property.

16.     However, there is no accessible parking for disabled patrons. Not one single space. The parking space designated for disabled persons does not comply with the Americans with Disabilities Act ("ADA").

17.     The parking area does not comply with the latest California Building Codes ("2010 CBC").

18.     Parking is one of the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

19.     When Plaintiff visited the Property, Plaintiff experienced access barriers related to parking, signage, and paths of travel.

20.     Plaintiff encountered the following barriers at Defendant's Property:

**The property that serves Mobil has many violations of the ADAAG which are barriers to somebody like Plaintiff. There are major problems related to the designated parking space and access aisle, the pavement is riddled with distress, faded paint, and lack of a marked path of travel. The faded paint of the ADA sign and "no parking" will not deter people from parking in the designated space. The lack of marked path of travel and non-compliant width of the access aisle places Plaintiff at greater risk due to being wheelchair bound. There are many other problems as well.**

**VIOLATION of 1991 ADAS § 4.3.2(1); 2010 ADAS § 206.2.1; 2010 CBC**
**§ 1114B.1.2; 2019 CBC § 11B-206.2.1.**  (Exterior route of travel.)  An
accessible route of travel is not provided to all entrances and portions of the
building, to all entrances of the Property, and/or between the building and a
public way.  Plaintiff needs a dedicated path of travel, free of obstructions
and vehicles, where (on which) Plaintiff can travel.  It is dangerous for
Plaintiff to navigate without a safe, protected, accessible route of travel; thus,
the violation interferes with Plaintiff's ability to fully access the premises.

**VIOLATION of 1991 ADAS §§ 4.1.2(1), 4.3.2(1); 2010 ADAS §§ 206.1,**
**206.2, 206.2.1, 206.2.2, 206.2.4; 2010 CBC § 1114B.1.2; 2010 CBC §**
**1127B.1; 2019 CBC §§ 11B-206.2.1, 11B-206.2.2, 11B-206.2.4.**
(Accessible route of travel.)  At least one accessible route shall be provided
within the site from accessible parking spaces and accessible passenger
loading zones; public streets and sidewalks; and public transportation stops to
the accessible building or facility entrance they serve.  At least one accessible
route shall connect accessible buildings, accessible facilities, accessible
elements, and accessible spaces that are on the same site.  The requisite
accessible route of travel is not provided.  There is no accessible route of
travel from the designated disabled parking spaces, adjacent access aisle to
the business/building entrance. Plaintiff needs an accessible route of travel,

with level and smooth ground, free of obstructions and vehicles, whereupon

Plaintiff can ambulate.  It is dangerous for Plaintiff to travel these areas

without a safe, protected, accessible route of travel; thus, the violation

interferes with Plaintiff's ability to fully access the premises.  The lack of a

safe and accessible route, with a smooth and level surface, denied Plaintiff

full and equal use or access during each of Plaintiff's visits by making it

difficult/ harder for Plaintiff to traverse.

**VIOLATION of 1991 ADAS § 4.1.2(7); 2010 ADAS § 216.6; 2010 CBC §**

**1127B.3; 2019 CBC § 11B-216.6.**  (Directional signage.)  There is no

directional signage showing an accessible path of travel to an accessible

entrance.  Plaintiff faces an increased risk of injury if Plaintiff is required to

backtrack because Plaintiff cannot find an accessible entrance into the

business/building.  Thus, Plaintiff requires clear signage directing him to any

accessible entrance(s).  Accessible entrances should be marked with an

International Symbol of Accessibility.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC § § 11B-502.8, 11B-**

**502.8.2.**  (Off-street unauthorized parking sign – not posted.)  The tow away

sign(s) (white sign stating that "UNAUTHORIZED VEHICLES PARKED

IN DESIGNATED ACCESSIBLE SPACES … WILL BE TOWED

AWAY") must be posted in a conspicuous place at each entrance to an off-street parking lot (facility), or immediately adjacent to and visible from each designated parking stall (space).  The requisite sign(s) are not posted. Plaintiff must use the designated disabled parking spaces and requires the proper protections of an access aisle and an accessible route of travel to safely access the Property.  Clear signage that explicitly warns of the consequences for improperly parking in the designated disabled parking spaces will deter others without disabilities from parking there.

**VIOLATION of 1991 ADAS § 4.6.4; 2010 ADAS § 502.6; 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.2.**  <u>(Sign missing – "Minimum Fine $250.")</u>  There was no sign warning of the minimum fine of $250 for unauthorized parking posted in front of the right designated disabled parking space.  Plaintiff needs to park in the space that is closest to the business entrance and designated for disabled persons.  Clear signage that distinctly warns of the penalties for unauthorized parking in the designated disabled parking space will deter others without disabilities from parking in the space and thereby blocking Plaintiff from being able to use it.

**VIOLATION of 2019 CBC § 11B-502.6; 2010 ADAS § 502.6.**  <u>(Sign obscured.)</u>  The sign identifying designated disabled parking space(s) is

illegible because it is covered with adhesive sticker(s) and/or graffiti. This makes it difficult for Plaintiff and other patrons to see and read the sign. Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property. Clear signage that explicitly marks the designated disabled parking space will deter others without disabilities from parking in the space and thereby blocking Plaintiff from being able to use it. Plaintiff needs to park in the space that is nearest to the business entrance and designated for disabled patrons.

**VIOLATION of 1991 ADAS § 4.3.7; 2010 ADAS § 403.3; 2019 CBC § 11B-403.3.** (Route/path of travel – cross slopes.) The cross slopes of the route/path of travel are greater than two percent (2%). It is difficult for Plaintiff to travel on surfaces with excess slopes. Plaintiff is at risk of falling when there are surfaces with excess slopes. The presence of excess slopes denied Plaintiff full and equal use or access during Plaintiff's visits by making it difficult and/or uncomfortable for Plaintiff to traverse the property/route. The barrier also deterred/deters Plaintiff from visiting the Property because it would make it difficult and/or uncomfortable for Plaintiff to walk/traverse the property/route.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 302.1, 303.1,**

**303.2, 303.3, 303.4; 2010 CBC §§ 1120B.2, 1133 B.7.1, 1133B.7.4; 2019
CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5**.  (Abrupt
changes in level; uneven ground surface.)  Floor and ground surfaces shall be
stable, firm, and slip resistant.  Changes in level of 1/4 inch high maximum
shall be permitted to be vertical and without edge treatment.  Changes in
level between ¼-inch high minimum and ½-inch high maximum shall be
beveled with a slope not steeper than 1:2. Changes in level greater than 1/2
inch high shall be ramped.  The route of travel, including from the designated
disabled parking space to the entrance of the building/business, have an
uneven ground surface with changes in level exceeding one-half inch (1/2")
(and no ramps are provided).  The route of travel has damaged ground which
is not flush or flat.  The ground has pavement distresses.  The types of
pavement distresses which exist include but are not limited to: alligator
(fatigue) cracking; joint reflection cracking; potholes; asphalt bleeding;
patching near utilities; block cracking; raveling; stripping; corrugation and
shoving; and depressions.  These pavement distresses are made worse and
exacerbated by design elements which do not follow the ADAAG.  These
areas should be fixed immediately because they pose a tripping and/or falling
hazard.  Plaintiff, a cannot safely and fully enjoy the premises when such
conditions are present.  These excess changes in level and uneven ground
surfaces pose risks to Plaintiff, including that Plaintiff's foot, may catch on

10
COMPLAINT

the uneven ground causing Plaintiff to fall.  These abrupt changes in level

pose an increased risk of danger to Plaintiff, as Plaintiff is more likely to

trip/fall than someone without disabilities.  The excess changes in level (i.e.,

uneven ground) denied Plaintiff full and equal use or access during each of

Plaintiff's visits by making it difficult/harder and more dangerous for

Plaintiff to traverse the property/route.  The excess changes in level (i.e.,

uneven ground) also deterred/deters Plaintiff from visiting the Property

because it would be difficult/harder and more dangerous for Plaintiff to

traverse the property/route.

**VIOLATION of 1991 ADAS § 4.29.5; 2010 CBC § 1133B.8.5; 2019 CBC § 11B-247.1.2.5.**  (Hazardous Vehicular Area.)  The path of travel crosses a

vehicular way, but the walking surface is not separated by curbs, railings, or

a continuous detectable warning. There is no safe way for Plaintiff to travel

from the designated disabled parking space to the business/building entrance.

Plaintiff is forced to travel a dangerous route, behind parked cars and in the

vehicle drive to the business entrance.  Plaintiff faces an increased risk of

injury if Plaintiff has to travel in the path of vehicles because it is more

difficult for drivers to see Plaintiff, and Plaintiff cannot quickly move out of

the way of an oncoming vehicle.  Thus, Plaintiff requires a safe path away

from other vehicles.  The safe, accessible path must be clearly marked so that

1  Plaintiff can find it.

2

3

4  **VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.; 2010 CBC §§**

5  **1129B.3, 1129B.4; 2019 CBC §§ 11B-502.2, 11B-502.6.4.1, 502.6.4.2.**

6  (Faded paint – accessible parking space lines.)  The paint used for the

7  designated disabled parking space is so worn and aged that it cannot (can

8  hardly) be seen.  This makes it unclear where the actual designated disabled

9  parking space is, and it makes it difficult for Plaintiff to use the space.

10  Plaintiff needs to be able to use the designated disabled parking space, which

11

12  should be located closest to the entrance and linked to an accessible route of

13  travel, because it is more difficult for Plaintiff as opposed to non-disabled

14  persons, to maneuver about the Property.  When the paint for the designated

15

16  disabled parking space is worn and aged, there is a greater risk that non-

17  disabled patrons will park in the designated disabled parking space,

18

19  preventing Plaintiff from using it and accessing the business.

20

21

22  **VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.1; 2010 CBC §**

23  **1129B.3; 2019 CBC 11B-502.3.1.**  (Width of adjacent access aisle.)  The

24  loading/unloading access aisle adjacent to the designated disabled parking

25  space is/was less than five feet (5') wide, which denied (would deny) plaintiff

26

27  full and equal use and access of the full width of the required access aisle.

28

Plaintiff needs extra space to be able to safely exit the vehicle. When the access aisle is too small, Plaintiff has difficulty disembarking from the vehicle, which poses a greater risk of injury to Plaintiff and can also cause humiliation and/or frustration.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2016 CBC §§ 11B-502.4, 11B-502.3.3; 2010 CBC § 1129B.3.4.** (Slope of designated disabled parking spaces.)  The designated disabled parking spaces have slopes and cross slopes that are greater than two percent (2%).  Given Plaintiff's mobility issues, Plaintiff needs to be able to traverse on a level surface.  Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet may catch on the sloped ground, causing Plaintiff to fall.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC § 1129B.3.3; 2019 CBC § 11B-502.4.** (Slopes of adjacent access aisle.)  The loading/unloading access aisle adjacent to the designated disabled parking spaces has surface slopes greater than two percent (2%).  Given Plaintiff's mobility issues, Plaintiff needs to be able to traverse on a level surface. Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet may catch on the sloped ground, causing Plaintiff to fall.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.4.**

(Parking space ground surface signage/International Symbol.)  The paint used for the designated disabled parking space is faded and cannot (can hardly) be seen; thus, there is no compliant surface signage at the designated disabled parking space.  The International Symbol of Accessibility is so faded and worn that it can hardly be seen.  This makes it difficult for Plaintiff and other patrons to identify or locate the designated disabled parking space.  When the paint for the International Symbol of Accessibility is so faded and worn, there is a greater risk that non-disabled patrons will park in the designated disabled parking space, preventing Plaintiff from using it and accessing the business.  Plaintiff needs to be able to park in the space that is nearest to the entrance and designated for disabled patrons. Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property.  Clear surface signage that explicitly marks the designated disabled parking space will deter others without disabilities from parking in the space, so that the space can be available for Plaintiff's use.

**VIOLATION of 2010 ADAS § 502.3.3; 2010 CBC § 1129B.3.1; 2019 CBC § 11B-502.3.3.**  ("NO PARKING" – ground surface signage.)  The words "NO PARKING," which are required to be painted in the loading/

unloading access aisle, were/are missing (and/or were completely faded such that the words were no longer visible).  As a result, non-disabled patrons parked in the loading/unloading access aisle, blocking Plaintiff from being able to use the access aisle.  Plaintiff needs extra space to be able to safely exit the vehicle. Plaintiff has difficulty disembarking the vehicle, which poses a greater risk of injury to Plaintiff and can cause humiliation and/or frustration.  Plaintiff cannot access the Property safely if Plaintiff cannot use an accessible parking space and adjacent access aisle.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.**  (Access aisle adjoining accessible route.)
The adjacent loading/unloading access aisles must adjoin an accessible route to an accessible entrance.  It does/did not.  Plaintiff cannot access the Property safely unless there is an access aisle onto which Plaintiff can disembark from the vehicle. The access aisle must lead to an accessible route, so that Plaintiff can safely travel to and enter the business.  There is no safe route of travel from the designated disabled parking space to the business entrance.  The barrier deterred/deters Plaintiff from visiting the property because the lack of a safe and accessible route would make it difficult, uncomfortable, and/or unsafe for Plaintiff to walk around the property, including to travel from the designated disabled parking space to the building

1    entrance.

2

3

4    **VIOLATION of 1991 ADAS §§ 4.3.8, 4.5.2; 2010 ADAS §§ 302.1, 303.2,**

5    **303.3, 303.4, 403.2; 2010 CBC §§ 1133B.7.1, 1133B.7.4; 2019 CBC §§**

6
     **11B-302.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-403.2.**  <u>(Changes in level</u>
7
     <u>– designated disabled parking space.)</u>  There are excess changes in level (of
8
9    more than one-half inch) within the parking spaces reserved for disabled

10   patrons.  The asphalt is uneven, and has depressions, dips, and divots.  The
11
     ground has sunken and cracked parts.  This makes travelling in this area
12

13   difficult.  These excess changes in level and uneven ground surfaces pose

14   risks to Plaintiff, including that Plaintiff may fall.
15

16

17   **VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC §**

18
     **1129B.3.3; 2019 CBC § 11B-502.4.** <u>(Slopes of adjacent access aisle.)</u>  The
19
20   loading/unloading access aisle adjacent to the designated disabled parking

21   spaces has surface slopes greater than two percent (2%).  Given Plaintiff's

22   mobility issues, Plaintiff needs to be able to traverse on a level surface.
23
     Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet
24

25   may catch on the sloped ground, causing Plaintiff to fall.

26

27

28

**VIOLATION of 2010 CBC § 1133B.5.2; 2019 CBC § 11B-405.5.**

(Minimum width of ramps.)  The route of travel has slopes greater than 1:20 (5%), but there is no compliant ramp.  There is no compliant ramp with a minimum width of forty-eight inches (48").  Plaintiff requires adequate space to navigate on sloped surfaces and/or ramps and Plaintiff cannot do so without a ramp of sufficient width.  The lack of a complaint ramp, of the requisite width, denied Plaintiff full and equal use or access during Plaintiff's visits by making it difficult/ harder for Plaintiff to traverse the property/route.  The lack of a complaint ramp, of the requisite width, also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder for Plaintiff to traverse the property/route.

**VIOLATION of 1991 ADAS § 4.7.7; 2010 CBC § 1127B.5.7.**  (Detectable warnings – curb ramp.)  Detectable warnings extending the full width and depth of the ramp are not installed where curb ramps lead to an accessible route.  The lack of a complaint ramp, with its attendant safety/accessibility features, denied Plaintiff full and equal use or access during Plaintiff's visits by making it difficult/harder to traverse the property/route.  The lack of a complaint ramp, with its attendant safety/accessibility features, also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder for Plaintiff to traverse the property/route.

1

2

3

4    **VIOLATION of 2010 CBC § 1122B.5;1991 ADAS § 7.2; 2010 ADAS §**

5    **904.** (Transaction counters.) There is no lowered counter that is free and clear

6    of clutter for disabled persons whose line of sight is lower. There was no

7    lowered, thirty-six (36) inches or less, transaction counter for use by persons

8    who cannot see high surfaces because of their disability. Without a lowered

9    transaction counter, it is difficult for Plaintiff to use the counter to conduct

10   business at the Property.

11

12

13   **VIOLATION of 2010 CBC § 1117B.5.7; 1991 ADAS § 4.30.6; 2010**

14   **ADAS § 703.4.** (Sanitary facilities – wall signage.) There is no signage on

15

16   the wall approaching the restrooms.

17

18

19   **VIOLATION of 2010 CBC § 1115B.6.** (Sanitary facilities – door signage.)

20   The sanitary facilities are missing door signage indicating an accessible

21   facility.

22

23

24   **VIOLATION of 2010 CBC § 1115B.4.1.3.3.2.** (Toilet rear grab bar.) The

25   grab bar on the wall behind the toilet, which is required to be at least thirty-

26   six (36) inches long, is not provided.

27

28

21.     The barriers existed during each of Plaintiff's visits in 2019 and 2020.

22.     Plaintiff alleges that Defendants knew that the foregoing architectural barriers prevented access. Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access, and that the noncompliance with the ADA Accessibility Guidelines and Title 24 of the California Building Code was intentional.

23.     Plaintiff intends visit the Property again soon. Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

24.     Defendants have failed to maintain in working and useable conditions those features necessary to provide ready access to persons with disabilities.

25.     Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their Property more accessible to their mobility impaired customers. The removal of these barriers is readily achievable. The United States Department of Justice has determined that removal of these types of barriers is readily achievable to remove.

26.     Defendants refuse to remove these barriers.

27.     On information and belief, Plaintiff alleges that Defendants' failure to remove these barriers was intentional, because the barriers are logical and obvious. During all relevant times, Defendants had authority, control, and dominion over

19
COMPLAINT

these conditions; thus, the absence of accessible facilities was not a mishap, but rather an intentional act.

28.     These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's access agents, pursuant to *Doran v 7-ELEVEN, Inc.,* 524 F3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them).

## IV. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. section 12101, *et seq.*)

(Against All Defendants)

29.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

30.     Title III of the ADA prohibits discrimination against any person on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation. U.S.C. § 12182(a).

31.     Defendants discriminated against Plaintiff by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges, or accommodations of Defendant's facility during each visit and each incident of deterred visit.

32.    The acts and omissions of Defendants herein were/are in violation of
Plaintiff's rights under the ADA and the regulations under 28 C.F.R. Part 36, *et seq.*

33.    Pursuant to the ADA, discrimination is a "failure to make reasonable
modifications in policies, practices or procedures, when such modifications are
necessary to afford goods, services, facilities, privileges, advantages or
accommodations to individuals with disabilities, unless the entity can demonstrate
that making such modifications would fundamentally alter the nature of such goods,
services, facilities, privileges, advantages or accommodations." 42 U.S.C. §
12182(b)(2)(A)(ii).

34.    The ADA requires removal of architectural barriers in existing
facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).
("discrimination includes … a failure to remove architectural barriers, and
communication barriers that are structural in nature, in existing facilities, … where
such removal is readily achievable"). The term "readily achievable" is defined as
"easily accomplishable and able to be carried out without much difficulty or
expense." 42 U.S.C. § 12181(9). Barriers are defined by reference to the ADA
Standards of Accessible Design ("ADAS"), found at 28 C.F.R., Part 36, including
the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") at Part
36, Appendix A.

35.    If removal of any barrier is not readily achievable, a failure to make
goods, services, facilities, or accommodations available through alternative

methods is also prohibited if these methods are readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v).

36.    Plaintiff alleges that Defendants can easily remove the architectural barriers at their facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers because removal was readily achievable. There are companies in the area which can repaint parking areas for as little as $350. Defendants can afford such costs, which are a fraction of what Defendants receive in rental profits for such a large and expensive property.

37.    Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

38.    On information and belief, the facility was modified after January 26, 1992, mandating compliance access requirements under the ADA.

39.    The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. §12183(a)(2).

40.    Plaintiff alleges that Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons, including Plaintiff, to the maximum extent feasible.

22
COMPLAINT

41.     The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii).

42.     Plaintiff alleges that Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

43.     Plaintiff seeks a finding from this Court that Defendants violated the ADA, so that Plaintiff may pursue damages under California's Unruh Civil Rights Act for Disable Persons Act.

44.     Here Defendants' failure to make sure that accessible facilities were available and ready to be used by the Plaintiff was/is a violation of law.

45.     Plaintiff would like to continue to frequent Defendants' property because it is close to his home. However, Plaintiff is deterred from doing so because Plaintiff has been discriminated against and is aware of accessibility barriers at the Property.

46.     Among the remedies sought, Plaintiff seeks an injunction order requiring compliance with state and federal access laws, and remediation of all the

existing access violations at the Property.

## V. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH ACT

## (Cal. Civ. Code § 51-53.)

(Against All Defendants)

47.    Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

48.    California Civil Code § 51 states, in part: "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

49.    California Civil Code § 51 also states, in part: "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

50.    California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA, into the Unruh Civil Rights Act. ("Unruh Act").

51.    The Unruh Act also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the Unruh Act Cal. Civ. Code § 51(f); *Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

52.    Defendants' above-mentioned acts and omissions have violated the Unruh Act by denying Plaintiff his rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disability.

53.    Defendants' above-mentioned acts and omissions have also violated the Unruh Act by denying Plaintiff his rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages. Cal. Civ. Code § 51(f), 52(a).

54.    Because violation of the Unruh Act resulted in difficulty, discomfort, and/or embarrassment for Plaintiff, the Defendants are each also responsible for statutory damages, such as a civil penalty. Cal. Civ. Code § 55.56(a)(c).

55.    Plaintiff was actually damaged.

//

//

//

//

//

//

//

//

//

//

COMPLAINT

56.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.  For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Person Acts.

2.  Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 per each offense.

3.  Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205, and Cal. Civ. Code § 52.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: January 7, 2022          THE LAW OFFICE OF HAKIMI & SHAHRIARI


By:    /s/ Peter Shahriari, Esq.
       PETER SHAHRIARI, ESQ.
       Attorney for Plaintiff Amber Machowski

COMPLAINT